**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DM GROUP, INC., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04075 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DELUXE CORP., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04080 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DELVEPOINT, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04096 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> QUANTARIUM ALLIANCE, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04098 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS, INC., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04103 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DIGITAL SAFETY PRODUCTS, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04141 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CIVIL DATA RESEARCH, LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04143 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SCALABLE COMMERCE, LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04160 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LABELS & LISTS, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04174 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>INNOVIS DATA SOLUTIONS INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04176 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ACCURATE APPEND, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04178 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ZILLOW, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04256 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EQUIMINE, INC., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04261 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMSON REUTERS CORP., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04269 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MELISSA DATA CORPORATION, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-04292 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RESTORATION OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04324 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>i360, LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04345 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ACCUZIP, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04383 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SYNAPTIX TECHNOLOGY, LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04385 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JOY ROCKWELL ENTERPRISES, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04389 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>E-MERGES.COM, INC.,<br><br>Defendants. | Case No. 1:24-cv-04434 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NUWBER, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04609 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKETREACH LLC, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-04664 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PROPERTYRADAR, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-05600 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE ALESCO GROUP, L.L.C.,<br><br>Defendants. | Case No. 1:24-cv-05656 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SEARCHBUG, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-05658 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERILIST, INC., *et al.*,<br><br>Defendants. | Case No. 1:24-cv-05775 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> US DATA CORP., *et al.*, <br><br> Defendants. | Case No. 1:24-cv-07324 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SMARTY, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-08075 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COMPACT INFORMATION SYSTEMS, LLC, *et al.*, <br><br> Defendants. | Case No. 1:24-CV-08451 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>DARKOWL, LLC, *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-10600 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>SPY DIALER, INC., *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-11023 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>INNOVATIVE WEB SOLUTIONS, LLC, *et al.*,<br><br>            Defendants. | Case No. 1:25-cv-01535 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PUBLICNSA, LLC, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-05989 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REDX LLC, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-06863 |
| ATLAS DATA PRIVACY CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FREEDOMSOFT303, LLC, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-09224 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>AGR MARKETING SOLUTIONS, LLC, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-12137 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF JUNE 30, 2026 ORDER

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Emails: rparikh@pemlawfirm.com
   keinhorn@pemlawfirm.com
   jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
   jbront@bsfllp.com
   kkozain@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite
2800 Miami, Florida 33131

Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION .............................................................................................1

ARGUMENT ....................................................................................................1

    I.      Defendants Do Not Identify Any Valid Basis for Reconsideration. .....1

    II.     Defendants' Arguments for Reconsideration Fail on the Merits...........3

         a.   Rulings in initial cases would not lead to issue preclusion.............3

         b.   The Scheduling Order does not prevent the remaining defendants from participating in dispositive issues or following the litigation of lead cases. ...........................................................6

         c.   The Court has discretion to control discovery and manage its docket, including by designating lead cases. ..................................6

    III.    Issue Sequencing is Not a Viable Alternative .......................................8

Conclusion .....................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**                                                                      Page(s)

*Atlas Data Privacy Corp. v. We Inform*,
    2025 WL 1787566 (D.N.J. June 27, 2025).........................................................9

*Brown v. Zickefoose*,
    No. 11-3330, 2011 WL 5007829 (D.N.J. 2011) .................................................2

*Danise v. Saxon Mortg. Servs. Inc*,
    738 F. App'x 47 (3d Cir. 2018).........................................................................1

*Harsco Corp. v. Zlotnicki*,
    779 F.2d 906 (3d Cir. 1985).........................................................................1, 2

*In re Fine Paper Antitrust Litigation*,
    685 F.2d 810 (3d Cir. 1982).............................................................................7

*Jansenius v. Holtec Int'l*,
    No. CV 21-03203, 2024 WL 2818280 (D.N.J. June 3, 2024)............................1

*Landis v. North American Co.*,
    299 U.S. 248 (1936)........................................................................................7

*Malibu Media, LLC v. John Does 1-16*,
    902 F.Supp.2d 690 (E.D. Pa. 2012) ...................................................................7

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999) .............................................................................2

*McKinney v. Fitzgerald*,
    No. CV 18-12987, 2024 WL 1344022 (D.N.J. Mar. 5, 2024)............................2

*Nat'l Credit Union Admin. Bd. (NCUA) v. Morgan Stanley & Co.*,
    2014 WL 241739 (S.D.N.Y. Jan. 22, 2014).......................................................7

*Oshri v. PNC Bank, Nat'l Ass'n*,
    No. 20-3248, 2022 WL 58544 (3d Cir. Jan. 6, 2022).........................................4

*Peerless Ins. Co. v. Penn. Cyber Charter Sch.*,
    19 F.Supp.3d 635 (W.D. Pa. 2014) ...................................................................3

*Polansky v. Exec. Health Res., Inc.*,
   300 F.Supp.3d 658 (E.D. Pa. 2018) ........................................................5

*Rush v. Portfolio Recovery Assocs. LLC*,
   977 F.Supp.2d 414 (D.N.J. 2013) ...........................................................3

*Sec. & Exch. Comm'n v. Chiueh*,
   No. 25-CV-1920, 2025 WL 2237547 (D.N.J. Aug. 6, 2025).............................7

*Treglia v. Beeler*,
   82 F.Supp.2d 297 (D.N.J. 1999) ..............................................................3

*Trunzo v. Citi Mortg.*,
   876 F.Supp.2d 521 (W.D. Pa. 2012) ........................................................3

*White v. City of Trenton*,
   848 F.Supp.2d 497 (D.N.J. 2012) .........................................................1, 3

## Statutes

Cal. Pub. Util. Code §2891.1(h) ............................................................11

N.J.S.A. 56:8-166.1................................................................................10

## Other Authorities

Manual for Complex Litigation, Fourth Ed.,
   Federal Judicial Center 2004 .................................................................8

iii

## INTRODUCTION

In its Scheduling Order of June 30, 2026, this Court determined that the best way to proceed in these cases is to select four lead cases to first proceed to discovery and trial, while the remaining thirty-three cases are stayed. Defendants challenge this approach on the theory that sequencing cases for trial violates due process because the initial, lead trials will supposedly have collateral estoppel effects on the other cases. But sequencing cases for trial does not violate due process, and the initial trials will not deny any other Defendant a full and fair opportunity to present a defense in their own case. This Court has broad discretion to manage its docket in the manner it sees fit, and this Court's approach safeguards the due-process rights of all parties while avoiding a discovery morass and moving these cases forward. For these reasons, Plaintiffs respectfully ask that the Court deny Defendants' Motion.

## ARGUMENT

### I.    Defendants Do Not Identify Any Valid Basis for Reconsideration.

"Relief by way of a motion for reconsideration is 'an extraordinary remedy' that is to be granted 'very sparingly.'" *Jansenius v. Holtec Int'l*, No. CV 21-03203, 2024 WL 2818280, at *2 (D.N.J. June 3, 2024) (quoting *White v. City of Trenton*, 848 F.Supp.2d 497, 500 (D.N.J. 2012)). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 52 (3d Cir. 2018) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

1

Reconsideration requires "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available [previously]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

Defendants do not attempt to satisfy this standard. Defendants do not suggest that a change in controlling law or new evidence justifies reconsideration here. Nor do they argue that this Court committed a clear error. Instead, Defendants argue only that the Court's decision will work manifest injustice. But manifest injustice "generally arise[s] only where 'the Court overlooked some dispositive factual or legal matter that was presented to it,'" or a "'direct, obvious, and observable' error" occurred. *McKinney v. Fitzgerald*, No. CV 18-12987, 2024 WL 1344022, at *1 (D.N.J. Mar. 5, 2024) (quoting *Brown v. Zickefoose*, No. 11-3330, 2011 WL 5007829, at *2, n.3 (D.N.J. 2011)). And this Court has already considered Defendants' due-process arguments and rejected them, so these arguments do not provide a valid basis for reconsideration. *See* Declaration of Rajiv D. Parikh, Esq. ("Parikh Decl.") at Ex. A, Transcript of June 29, 2026 Hearing ("Tr.") at 17:8–22:2; 29:4–30:25; 40:21–41:4; 56:23–59:5.

For this reason alone, this Court may deny Defendants' Motion. "It is improper on a motion for reconsideration to 'ask the Court to rethink what it has

2

already thought through—rightly or wrongly.'" *Rush v. Portfolio Recovery Assocs. LLC*, 977 F.Supp.2d 414, 438 (D.N.J. 2013) (quoting *White*, 848 F.Supp.2d at 500). The movant must show that "'dispositive factual matters or controlling decisions of law' were presented to the court but not considered." *Treglia v. Beeler*, 82 F.Supp.2d 297, 299 (D.N.J. 1999) (citation omitted). "[A] motion for reconsideration that 'essentially restates, with added vigor, the arguments made previously' does not satisfy this 'substantial standard.'" *Peerless Ins. Co. v. Penn. Cyber Charter Sch.*, 19 F.Supp.3d 635, 651 (W.D. Pa. 2014) (quoting *Trunzo v. Citi Mortg.*, 876 F.Supp.2d 521, 544 (W.D. Pa. 2012)).

## II.    Defendants' Arguments for Reconsideration Fail on the Merits.

Even if this Court considers the merits of Defendants' Motion, the Motion should clearly be denied. Defendants challenge the Court's case management approach by arguing that: (i) the Court's resolution of issues in the lead trials will have an issue-preclusive effect in the other cases; (ii) non-party defendants will be prejudiced by exclusion from participation in the lead cases; and (c) this Court has no authority to select lead cases for trial because these cases are not formally consolidated or an MDL. *See* Def's Mot. at 6–11. These arguments uniformly fail.

### a.  Rulings in initial cases would not lead to issue preclusion.

To begin, Defendants argue that the Court has effectively created an MDL and adopted a binding "bellwether" approach in which rulings on legal issues in the

3

initial set of four cases will have issue-preclusive effect on the stayed cases. Def's Mot. 2–4, 8–11. But as this Court made clear, rulings in the lead cases are "not going to bind anybody." Parikh Decl. at Ex. A, Tr. at 57:3–4. Issue preclusion will not apply to legal rulings or factual findings rendered in the initial cases except perhaps in rare circumstances in which a defendant chooses to intervene in an ongoing case or similar. The doctrine "precludes relitigation of an issue already decided by a New Jersey court when: (1) the issue is identical; (2) the issue was actually litigated; (3) the previous court issued a final judgment on the merits; (4) determination of the issue was essential to the judgment; and (5) the party against whom estoppel is asserted was a party or in privity with a party to the prior proceeding." *Oshri v. PNC Bank, Nat'l Ass'n*, No. 20-3248, 2022 WL 58544, at *2 (3d Cir. Jan. 6, 2022) (citation omitted). But here, most of these cases will not involve actual litigation of identical issues. And absent intervention, no Defendant will be a party to any proceedings in another Defendant's case.

Nothing in this Court's Order suggests otherwise. The Scheduling Order does not purport to identify issues for resolution at a bellwether trial that will have issue-preclusive effect on other defendants. Determining the preclusive effect of bellwether rulings on non-parties is demanding and requires the court to "find that the cases tried are representative of the larger group of cases or claims," typically based "on competent, scientific, statistical evidence." *Polansky v. Exec. Health Res.,*

4

*Inc.*, 300 F.Supp.3d 658, 662 (E.D. Pa. 2018) (quotation marks and citation omitted). This Court has not purported to find that any of these cases are representative of the others. And this Court was clear that it used the term "bellwether" only for illustrative purposes, and not as a technical term that would indicate that the lead cases are representative of the other cases for purposes of issue preclusion. *See* Parikh Decl. at Ex. A, Tr. at 59:2–5. The initial trials envisioned by this Court thus may inform—not bind—both Plaintiffs and the remaining defendants.

Defendants also argue that "even if the non-participating Defendants are not collaterally estopped by rulings in these first four cases, this Court is unlikely to reverse itself on critical and potentially dispositive issues." Mot. at 7. But in any litigation, the resolution of issues in one case can affect the law that applies in other cases in a number of ways, including by creating precedent that is binding in future cases and informally, by influencing the legal views of judges. The fact that earlier decisions can control on issues in later cases through the doctrine of stare decisis or the persuasive effect of the prior decision's reasoning does not create a due process problem. And for the same reasons, the fact that this Court will decide legal questions in those cases and may reach the same conclusions on the same questions in other cases does not show there is a due-process problem here.

### b. The Scheduling Order does not prevent the remaining defendants from participating in dispositive issues or following the litigation of lead cases.

Defendants assert that proceeding with four initial cases will prevent other Defendants from participating in the lead cases. But non-parties generally cannot participate in litigation between others, so there is nothing novel or prejudicial about that. Nothing in the Court's Scheduling Order prohibits any non-lead defendants from intervening or filing briefs as amici whenever the Court addresses a common, dispositive issue. To the extent intervention proves too cumbersome, this Court suggested a "hybrid approach" in which the remaining Defendants could submit questions for Plaintiffs' depositions. Parikh Decl. at Ex. A, Tr. at 23:19–24:24. Plaintiffs are amenable to this idea pending further discussion among the parties and with the Court. Nor is it unfair for those Defendants whose cases are stayed to have to rely on the public docket to follow the initial cases, as Defendants complain. It is hardly uncommon for a litigant to need to track the docket of a related case. And if following the docket is truly so onerous as Defendants claim, nothing in the Scheduling Order prevents this Court from requiring the parties to create a distribution list that would ensure each Defendant receives case updates.

### c. The Court has discretion to control discovery and manage its docket, including by designating lead cases.

Defendants argue that this Court has no authority to select cases for trial or stay proceedings in other cases because these cases were not formally consolidated

6

or designated as an MDL.  But this Court does not need to formally consolidate these cases or await designation of these cases as an MDL to manage its own docket. Instead, "matters of docket control and . . . discovery are committed to the sound discretion of the district court." *Sec. & Exch. Comm'n v. Chiueh*, No. 25-CV-1920, 2025 WL 2237547, at *2 (D.N.J. Aug. 6, 2025) (quoting *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 817 (3d Cir. 1982)). And "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Id.* (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).

In the exercise of this inherent authority, Courts routinely select cases for trial while staying other, related cases, regardless of whether an MDL has been established or the cases have been consolidated. *See, e.g.*, *Nat'l Credit Union Admin. Bd. (NCUA) v. Morgan Stanley & Co.*, 2014 WL 241739, *2 (S.D.N.Y. Jan. 22, 2014) (explaining that court previously designated "lead case" and stayed cases against other defendants before an MDL was established); *Malibu Media, LLC v. John Does 1-16*, 902 F.Supp.2d 690, 702 (E.D. Pa. 2012) (designating bellwether trial in unconsolidated cases). There is nothing exceptional about the Court's approach here, which is well-crafted to generate guidance for these cases without binding non-parties. *See* Manual for Complex Litigation, Fourth Ed., Federal Judicial Center

7

2004, at 171 ("The results of a trial of one or a few representative lead cases can provide information and motivation helpful to settlement of related cases.").[1]

## III.    Issue Sequencing is Not a Viable Alternative

Defendants' proposed alternative to the model adopted by this Court is a nonstarter. Defendants suggest that the Court should follow an "issue sequencing" approach, in which "dispositive issues" are simultaneously subject to discovery in all cases and decided through rulings that apply across cases, as this Court did with Defendants' First Amendment challenge. Mot. at 12. Although it was feasible for this Court to resolve questions of law in this manner, as with Defendants' First Amendment challenge, extending that approach to discovery and *questions of fact* that ultimately will need to be decided by a jury makes no sense. Defendants' proposed "issue sequencing" approach does not address the basic problem that led this Court to propose designation of leading cases: resolving issues across cases would require moving "forward with discovery in [every] case" at once on each of the relevant issues. Parikh Decl. at Ex. A, Tr. at 37:6–7. As this Court observed, that approach would require "a full time discovery court [] just to deal with the objections." Parikh Decl. at Ex. A, Tr. at 37:20–22.  And the issues Defendants seek to prioritize are far too inconsequential to justify briefing and discovery on those

---

[1] Online at https://www.uscourts.gov/file/mcl4pdf (last accessed July 21, 2026).

issues across all cases before any of these cases proceed to general discovery and trial.

**First**, Defendants suggest that this Court should decide whether the nondisclosure requests at issue in each case were sent by a "covered person" or an "authorized person." Mot. at 12–13. But as a matter of law, this Court has already rejected Defendants' argument that a notification is "invalid because an authorized person uses a third party to deliver it" and concluded that whether a covered person "employed Atlas's platform to do so is of no moment." *Atlas Data Privacy Corp. v. We Inform*, 2025 WL 1787566, at *4 (D.N.J. June 27, 2025). And as a factual matter, there is no serious dispute that Atlas delivered the nondisclosure requests at issue on behalf of each covered person asserting claims in these cases. Thus, it is unclear what Defendants expect discovery on this issue to resolve, or why they believe re-litigating this question should take priority over bringing these cases to trial.

**Second**, Defendants argue that the Court should decide a battery of supposedly significant questions about the meaning of "disclose," including: (1) whether a disclosure can occur through a business-to-business transaction; (2) whether selling an FCRA report that includes the address of a covered person back to the individual requesting it constitutes a disclosure; and (3) whether a database that contains addresses or phone numbers of covered persons violates the statute even if no user has searched for the covered person. Mot. at 13–14 & n.1.

9

But none of these issues are significant enough to warrant centralized attention from this Court or further delay before these cases proceed to trial. Business-to-business transactions are indisputably disclosures under the statute, which expressly applies to any "business" and prohibits many forms of disclosure that can occur between businesses. N.J.S.A. 56:8-166.1(a)(1); 56:8-166.1(d). Issues regarding FCRA reports are best handled in cases involving Defendants who purport to sell consumer reports subject to the FCRA[2], not generalized proceedings applicable across cases. And Daniel's Law clearly defines "disclose" to include "making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." *Id.* 56:8-166.1(d).

**Third**, Defendants ask the Court to decide in advance of any trial what constitutes an "unpublished telephone number" within the meaning of the statute. Mot. at 14. But this issue will only arise in cases involving Defendants who disclose phone numbers, and is irrelevant in cases involving Defendants who only disclose addresses. Thus, as with residual questions regarding the FCRA, questions regarding whether a phone number is "unpublished" are best handled in cases in which that argument is made. And beyond that, this question has an easy solution (as a matter of law) and thus does not merit substantial briefing. As Plaintiffs have argued before,

---

[2] As Plaintiffs have noted previously, entities which have FCRA covered products also have other products that do not implicate FCRA.

10

telephone directories still exist, and an unpublished number is simply a non-celluar telephone number that is not listed in a local directory. Appellees' Joint Response Brief at 48, *Atlas Data Privacy Corp. v. We Inform LLC*, No. 25-1555 (3d Cir. May 12, 2025); *cf.* Cal. Pub. Util. Code §2891.1(h).

Thus, there is no reason to adopt Defendants' "issue sequencing" approach. Defendants' approach would require ongoing discovery across all cases at once on a handful of issues that are unlikely to matter to the resolution of these cases because they are largely premised on clear misreadings of Daniel's Law. This approach would not "resolve" any disputed factual questions, which will ultimately need to be decided by a jury in each case. But it would create a quagmire of discovery on those issues, further delaying relief for the covered persons many Defendants continue to expose to harm. The Court's approach, in contrast, provides a path to move this litigation forward without impairing Defendants' due-process rights.

## Conclusion

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration and proceed with the selection and scheduling process established by the June 30, 2026 Scheduling Order. Plaintiffs will be prepared to do so at the July 30, 2026 conference with the Court.

Dated: July 23, 2026                    Respectfully submitted,

By: /s/ *Rajiv D. Parikh*
    Rajiv D. Parikh

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 557-5700
Email: rparikh@pemlawfirm.com
      keinhorn@pemlawfirm.com
      jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Email: mmao@bsfllp.com
jbront@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250

12

Email: epalmer@bsfllp.com

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I electronically filed a true and complete copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing.

/s/ *Rajiv D. Parikh*
Rajiv D. Parikh

14